The plaintiffs below, Charles M. Fogarty and Jane C. Fogarty, appeal from the trial court's judgment dismissing all claims against the defendants, J. Keith Jones, John T. Baron, and Parker, Poe, Adams, and Bernstein, L.L.P. We affirm in part, reverse in part, and remand.
 Facts and Procedural History
Parker, Poe, Adams, and Bernstein is a North Carolina law firm. Jones and Baron are licensed attorneys who practice at that firm; Jones and Baron are apparently *Page 786 
licensed .to practice law in various states, but they are not licensed to practice law in Alabama (hereinafter all three appellees will collectively be referred to as "Parker Poe").
The Fogartys are residents of South Carolina; they were minority members in three closely held companies: Confederate Money, LLC; Pleasure Island Hotel Corporation; and Victory Ventures, LLC. All of these companies were organized under the laws of Alabama and were involved in a failed real-estate venture in Gulf Shores, Alabama. The majority shareholder in the venture was MacPherson Group, Inc., which is made up of Gary Southworth, Ann Bearden, and James Bearden.
In early 2002, the Fogartys became concerned by a sudden deterioration in the finances of the venture. Based on this concern, the Fogartys traveled to Gulf Shores and met with Robert Grant, the accountant for Confederate Money. Based on statements made by Grant, the Fogartys suspected that Southworth and the Beardens had made numerous misrepresentations regarding the affairs of the venture. Jane Fogarty later returned to Robert Grant's office, where she was permitted only limited access to certain Confederate Money records located at Grant's office. Around March 2002, the Fogartys initiated their ongoing attempts to obtain certain accounting information and other records of the failed real-estate venture from the MacPherson Group, Inc. The Fogartys allege that Southworth illegally deposited Confederate Money funds into a MacPherson Group checking account.
Parker Poe delivered a letter to the Fogartys on April 17, 2002, explicitly stating that it represented the MacPherson Group and Southworth, and stating that the Fogartys would not be allowed to inspect and copy the records of Confederate Money. It is unclear whether at that time Parker Poe was also representing Confederate Money. According to the Fogartys, Parker Poe repeatedly threatened legal action against them if they continued to seek access to the records and to claim that Southworth and the MacPherson Group had committed fraud. The Fogartys allege that Parker Poe misrepresented to them Alabama law by stating that under Alabama law the Fogartys were not entitled to review the books and records of Confederate Money. After the Fogartys had retained their own attorney, they received a letter from Parker Poe in July 2002, stating that the Fogartys were already in possession of all the records of Confederate Money. The Fogartys then attempted to meet again with Robert Grant, but Parker Poe sent letters to the Fogartys stating that the Fogartys did not have the right to contact Grant. According to the complaint, in August 2003, Parker Poe explicitly stated that it had represented Confederate Money. Parker Poe never produced the business records the Fogartys were seeking. According to the complaint, Parker Poe removed the books and records of Confederate Money from Alabama specifically to prevent the Fogartys from having access to those books and records.
Because of Parker Poe's actions, the Fogartys allege, they were unable to investigate how the funds they had contributed to the venture had been used and the financial status of Confederate Money, a company in which they were minority members. The Fogartys also allege that they are due statutory penalties as a result of Parker Poe's role in wrongfully preventing the Fogartys from inspecting the company's records.
On January 16, 2004, the Fogartys sued 13 defendants, including Parker Poe. The complaint stated 14 counts, all of which arise out of the failed real-estate development *Page 787 
venture in Gulf Shores. The Fogartys' complaint sought a preliminary injunction (count 1) and a declaratory judgment (count 2). The complaint also sought damages for money owed (count 3), oppression (count 4), breach of fiduciary duty (count 5), conversion (count 6), fraud, suppression, and misrepresentation (count 7), conspiracy to defraud and suppress (count 8), and civil theft/embezzlement (count 9). The complaint further alleged violations under the Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala. Code 1975 (count 10), and the Alabama Business Corporation Act, § 10-2B-1.01 et seq., Ala. Code 1975 (count 11). Finally, the complaint alleged abuse of corporate form (count 12), a derivative action (count 13), and the unauthorized practice of law (count 14). The unauthorized-practice-of-law claim is specifically directed at Parker Poe, but all of the counts in the complaint include demands for relief against the "defendants" generally.
On April 21, 2004, Parker Poe filed a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss all of the claims against them. The grounds for the motion were: (1) that it affirmatively appeared from the complaint that the Fogartys were not clients of Parker Poe for purposes of a legal-malpractice action because, it alleged, the Fogartys were not in privity with Parker Poe and Parker Poe thus owed no legal duty to the Fogartys; (2) that it affirmatively appeared from the complaint that the Fogartys' claims arose out of the rendition of legal services by Parker Poe and that the Fogartys' exclusive remedy for such claims is under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala. Code 1975 ("the ALSLA") and no claim is made under that act; and (3) that no cause of action exists in Alabama either for the unauthorized practice of law or for the violation of the Alabama Rules of Professional Conduct, which prohibit the unauthorized practice of law.
On June 28, 2004, the trial court entered the following notation on the case-action summary: "Motion to dismiss granted as to J. Keith Jones, John T. Baron, and Parker, Poe, Adams and Bernstein, L.L.P." The Fogartys filed a motion to alter, amend, or vacate the judgment of dismissal, which the trial court denied. On November 8, 2004, the trial court certified the order as final under Rule 54(b), Ala. R. Civ. P. The Fogartys appealed.
 Standard of Review
"This Court must review de novo the propriety of a dismissal for failure to state a claim and must resolve all doubts in favor of the plaintiff:
 "`It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala. R. Civ. P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979). . . .
 "`Where a 12(b)(6) [, Ala. R. Civ. P.,] motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala. 1982).' *Page 788 
 "Fontenot v. Bramlett, 470 So.2d 669, 671
(Ala. 1985)."
Bay Lines, Inc. v. Stoughton Trailers, Inc.,838 So.2d 1013, 1017-18 (Ala. 2002).
 Analysis
On appeal, the Fogartys have not specifically stated which of the 14 counts in the complaint they contend should not have been dismissed for failure to state a claim against Parker Poe. It appears that the actions alleged in counts 1-6, 9, 12, and 13 are not applicable to Parker Poe, and the Fogartys have not specifically mentioned those counts in their brief to this Court.[1] We will thus consider whether the trial court erred in dismissing counts 7 (fraud, suppression, and misrepresentation), 8 (conspiracy to defraud and suppress), 10 (violations of the Alabama Limited Liability Company Act), 11 (violations of the Alabama Business Corporation Act), and 14 (unauthorized practice of law).
On appeal, Parker Poe asserts the same three grounds for dismissal of the Fogartys' claims against it for failure to state a claim upon which relief can be granted as Parker Poe raised in its motion to dismiss. While it is unclear the precise grounds on which the trial court granted the motion to dismiss for failure to state a claim, the three grounds for dismissal asserted by Parker Poe in its Rule 12(b)(6) motion are the only grounds addressed by either party on appeal.
First, Parker Poe alleges that the motion to dismiss for failure to state a claim was properly granted because, it argues, all of the claims alleged in the complaint arise solely out of the rendition of legal services by Parker Poe, and the exclusive remedy for such claims is the ALSLA, and the Fogartys make no claim under the ALSLA in the complaint. We disagree with Parker Poe's assertion that the ALSLA is the exclusive remedy for the Fogartys' claims against it. The ALSLA applies only to allegations of legal malpractice, i.e., claims against legal-service providers that arise from the performance of legal services, and only to allegations against attorneys licensed to practice law *Page 789 
in the State of Alabama. Thus, it does not apply to Parker Poe in the present case.
The ALSLA is codified at §§ 6-5-570 to -581, Ala. Code 1975, and creates one form of action against legal-service providers, as follows:
 "There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."
§ 6-5-573, Ala. Code 1975.
The ALSLA defines a legal-service provider as:
 "Anyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and the members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."
§ 6-5-572(2), Ala. Code 1975.
In Cunningham v. Langston, Frazer, Sweet Freese,P.A., 727 So.2d 800 (Ala. 1999), this Court thoroughly discussed the issue of the applicability of the ALSLA to claims against legal-service providers that do not arise from the performance of legal services. In Cunningham, a lawyer sued a law firm, alleging breach of contract and negligence or wantonness arising out of a fee-splitting arrangement in an underlying case. Cunningham, 727 So.2d at 801-02. After a thorough examination of the language of the entire act, this Court held that "the ALSLA does not apply to an action filed against a `legal service provider' by someone whose claimdoes not arise out of the receipt of legal services."Cunningham, 727 So.2d at 804 (emphasis added).
Counts 7, 8, 10, 11, and 14 of the complaint do not allege tortious conduct resulting from the receipt of legal services by the Fogartys from Parker Poe. Also, Parker Poe, in arguing that no "privity" existed between itself and the Fogartys, expressly states that it never provided legal services to the Fogartys. Therefore, it appears that the ALSLA does not apply to the Fogartys' claims; thus, it cannot be, as Parker Poe asserts, their exclusive remedy.
Furthermore, it appears that the ALSLA applies only to attorneys who are licensed to practice law in Alabama. Parker Poe argues that it was "engaged in the practice of law in the State of Alabama" and, thus, falls under the second prong of the ALSLA's definition of a legal-service provider. However, this Court has expressly stated that "[t]he plain language of § 6-5-572(2), as well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers and to entities that are composed of members who are licensed to practice law within the State of Alabama." Alabama Educ. Ass'n v. Nelson, 770 So.2d 1057,1059 (Ala. 2000) (emphasis added).
According to the complaint, Jones and Baron were not licensed to practice law within the State of Alabama, and Parker Poe does not dispute this allegation. Thus, the ALSLA would not apply to the claims against Parker Poe, and the ALSLA could not be the Fogartys' exclusive remedy. The trial court erred, therefore, in granting Parker Poe's Rule 12(b)(6) motion on Parker Poe's first stated ground. *Page 790 
Next, Parker Poe alleges that no cause of action exists in Alabama for the unauthorized practice of law. The Fogartys, however, argue that Armstrong v. Brown Service Funeral HomeWest Chapel, 700 So.2d 1379 (Ala.Civ.App. 1997), does recognize such a cause of action. Parker Poe, in turn, argues that this Court should overrule Armstrong.
In Armstrong, certain customers brought an action against a funeral home, alleging fraudulent suppression and the unauthorized practice of law under § 34-3-6, Ala. Code 1975.Armstrong, 700 So.2d at 1380. Section 34-3-6, Ala. Code 1975, provides, in pertinent part:
 "(a) Only such persons as are regularly licensed have authority to practice law.
 "(b) For the purposes of this chapter, the practice of law is defined as follows: "Whoever,
 "(1) In a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court or a body, board, committee, commission or officer constituted by law or having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the state or any subdivision thereof; or
 "(2) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; or
 "(3) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the prevention or the redress of a wrong or the enforcement or establishment of a right; or
 "(4) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense;
 "is practicing law."
In Armstrong, the complaint alleged that the customers and the funeral home had entered into a burial contract pursuant to which the customers were charged $175 for assistance with preparing certain Social Security, legal, and insurance forms.700 So.2d at 1380. The funeral home filed a motion to dismiss for failure to state claim under Rule 12(b)(6), Ala. R. Civ. P., and the trial court granted the motion. The Court of Civil Appeals reversed the trial court's order, holding that the fraudulent-suppression claim and theunauthorized-practice-of-law claim were "cognizable theories of law which may, upon proof of the proper facts, entitle the plaintiffs to recover against the defendant." 700 So.2d at 1382. Thus, Armstrong did recognize a cause of action for the unauthorized practice of law.
In the present situation, as was the case in Armstrong, the Fogartys have stated a claim alleging the unauthorized practice of law under § 34-3-6, Ala. Code 1975. In accordance with that statute, the Fogartys have alleged that Jones and Baron were not licensed to practice law in Alabama, that Jones and Baron were making representations concerning Alabama law for both the majority shareholders of Confederate Money and for Confederate Money itself, and that the Fogartys were injured as a result. Therefore, it appears that the Fogartys can prove a set of facts entitling them to relief on this claim; thus, the trial *Page 791 
court erred in dismissing count 14 under Rule 12(b)(6).
Parker Poe seems to concede that if a private cause of action for the unauthorized practice of law does exist and if the ALSLA does not apply to this claim, then the Fogartys have stated a claim upon which relief can be granted. However, Parker Poe asks this Court to overrule Armstrong and to hold that the unauthorized practice of law is not a cognizable claim in Alabama. We are not persuaded to do so. In Alabama, the unauthorized practice of law is a criminal act. Section 34-3-7, Ala. Code 1975, states:
 "Any person, firm or corporation who is not a regularly licensed attorney who does an act defined in this article to be an act of practicing law is guilty of a misdemeanor and, on conviction, must be punished as provided by law. Any person, firm or corporation who conspires with, aids and abets another person, firm or corporation in the commission of such misdemeanor must, on conviction, be punished as provided by law."
 This Court has long recognized that "[e]ven though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages." Martinson v. Cagle, 454 So.2d 1383, 1385
(Ala. 1984). Therefore, the Armstrong decision, which recognizes a private cause of action for the unauthorized practice of law, is consistent with Alabama caselaw that recognizes a private cause of action for a criminal act that results in injury.
 Furthermore, Armstrong is consistent with the law in other jurisdictions recognizing the unauthorized practice of law as a private cause of action. In McMahon v. Advanced Title Services Co. of West Virginia, 216 W.Va. 413, 607 S.E.2d 519 (2004), the Supreme Court of Appeals of West Virginia recognized the right of a plaintiff to predicate a claim for relief upon allegations of the unauthorized practice of law. In making this recognition, that court listed several other jurisdictions, including Alabama, that recognize such a claim:
 "Our research indicates that in cases from a number of jurisdictions, courts have recognized the right of plaintiffs to predicate claims for damages and other relief upon allegations of the unauthorized practice of law by a defendant. See, e.g., Armstrong v. Brown Service Funeral Home West Chapel, 700 So.2d 1379
(Ala.Civ.App. 1997) (claims for damages and class action relief for unauthorized practice held cognizable); American Abstract and Title Co. v. Rice, [186 S.W.3d 705 (Ark. 2004)] (unfair trade practices and class action claims cognizable, existence of State Bar Committee on unauthorized practice did not oust trial court of jurisdiction); accord, Speights v. Stewart Title Guaranty Co., [186 S.W.3d 715 (Ark. 2004) ]; Herman v. Prudence Mutual Casualty Company, 41 Ill.2d 468, 244 N.E.2d 809 (1969) (plaintiff could seek injunctive relief against unauthorized practice); Kim, v. Desert Document Services, 101 Wash. App. 1043 . . . (Div. 1 2000) (unpublished) (plaintiffs could bring private action asserting unauthorized practice of law), review denied, 142 Wash.2d 1026, 21 P.3d 1149 (2001); J.H. Marshall Associates v. Burleson, 313 A.2d 587 (D.C. 1973) (individual plaintiff had standing to seek injunction against unauthorized practice of law); Dressel v. Ameribank, 468 Mich. 557, 664 N.W.2d 151 (2003) (plaintiffs asserted class action claim for unauthorized practice); accord, Perkins v. CTX Mortgage Co., 137 Wash.2d 93, 969 P.2d 93 (1999); but compare Reliable Collection Agency, *Page 792 Ltd. v. Cole, 59 Haw. 503, 584 P.2d 107 (1978) (statute prohibiting unauthorized practice of law did not confer standing)."
216 W.Va. at 417, 607 S.E.2d at 523.
The decision in Janssen v. Guaranty Land Title Co.,571 S.W.2d 702 (Mo.Ct.App. 1978), is the only example cited by Parker Poe in which the unauthorized practice of law was not recognized as a private cause of action. That decision is easily distinguishable from the present case. In Janssen, the plaintiffs based their cause of action on Missouri Supreme Court Rule 5.25, which stated: "No provision of Rule 5 shall limit the right of any individual to seek any remedy afforded by law, nor shall this Rule constitute an exclusive method for regulating the practice of law." 571 S.W.2d at 706. Based on this Rule the Missouri Court of Appeals held:
 "Rule 5 deals generally with complaints and proceedings arising out of the practice of law and provides the procedure for investigating charges against persons, firms, or corporations accused of illegally practicing law. The intendment of Rule 5 and the procedures thereunder is to protect the public and those charged with the administration of justice from individuals who are not qualified and duly licensed attorneys; to maintain the integrity of the courts and the honorable profession of the practice of law. The main purpose is not punishment, and certainly not punishment through the device of punitive damages. Placed in its proper context, Rule 5.25 should be interpreted to preserve traditional remedies at law for individuals who are harmed by unscrupulous lawyers or by persons acting in an unauthorized legal capacity. Such choses in action may be based, for example, on a theory of fraud, or of negligence. But plaintiffs may not bootstrap the injury suffered by virtue of a defective title into a cause of action for the unauthorized practice of law."
571 S.W.2d at 706 (citations omitted; footnote omitted).
Unlike Janssen, the present cause of action is based on statutes that specifically prohibit the unauthorized practice of law, that make the unauthorized practice of law criminal, and that expressly authorize some punishment. See §§ 34-3-6 and34-3-7, Ala. Code 1975. Also, the Fogartys are not attempting to "bootstrap" the alleged injury suffered into a cause of action for the unauthorized practice of law. Instead, the Fogartys allege that they were directly injured by the misrepresentations of Alabama law made by Parker Poe. Therefore, the reasoning set forth in Janssen is unconvincing and inapplicable in the present situation. Parker Poe fails to provide this Court with any convincing reason to overrule Armstrong, and we decline to do so. Because Alabama does recognize a cause of action for the unauthorized practice of law, we need not address Parker Poe's alternative argument regarding whether Alabama recognizes such a cause of action based on a violation of the Alabama Rules of Professional Conduct.
Finally, Parker Poe asserts that the Fogartys cannot bring a legal-malpractice claim against Parker Poe because "no privity existed between the Fogartys and Parker Poe. However, the Fogartys expressly state that they did not allege a legal-malpractice claim in their complaint, and a review of the complaint does not reveal any claims of legal malpractice. (Fogartys' reply brief at 15.) Therefore, we see no need to determine whether there was sufficient privity to support a legal-malpractice claim.
The sole issue before us is whether the trial court erred in granting Parker Poe's motion to dismiss. Our standard of review requires us to reverse an order dismissing *Page 793 
a claim if the plaintiff could possibly prove any set of facts allowing for recovery. Fontenot v. Bramlett,470 So.2d 669 (Ala. 1985); Bay Lines, supra. For the reasons already discussed, Parker Poe's motion to dismiss for failure to state a claim should not have been granted based on its arguments premised on the rendition of legal services, the ALSLA, or the unavailability in Alabama of a cause of action for the unauthorized practice of law.
Examining the individual allegations in the complaint also leads us to conclude that the Rule 12(b)(6) motion should not have been granted as to all of the Fogartys' claims. As already noted, it appears that counts 1-6, 9, 12, and 13 have no application to Parker Poe, and, on appeal, the Fogartys do not make any explanation of how those claims would apply. However, considering our standard of review on a dismissal under Rule 12(b)(6) and our liberal construction of a complaint, it does not appear "beyond a doubt" that the Fogartys could not prove any set of facts entitling them to relief on count 7 (fraud, suppression, and misrepresentation), count 8 (conspiracy to defraud and suppress), count 10 (violations of the Alabama Limited Liability Company Act), count 11 (violations of the Alabama Business Corporation Act), and count 14 (unauthorized practice of law).
According to Rule 8(a), Ala. R. Civ. P., a claim for relief need only contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems himself entitled.
As to counts 7 and 8, the Fogartys allege that Parker Poe engaged in fraud, suppression, and misrepresentation, and that it conspired to defraud the Fogartys. It appears that the Fogartys could prove a set of facts that would support a claim for fraud, suppression, and misrepresentation, or conspiracy to defraud, and Parker Poe does not offer any explanation as to why these particular claims should be dismissed except for the implausible arguments discussed above.
Count 10 alleges violations under the Alabama Limited Liability Company Act against "defendants" generally and demands judgment for various types of relief the Fogartys believe they are entitled to. Included in the Alabama Limited Liability Company Act is § 10-12-16, Ala. Code 1975, which provides:
 "(a) Each limited liability company shall keep at the office referred to in subdivision (1) of subsection (a) of Section 10-12-15 the following records:
 "(1) A current list of the full name and last known business or residence street address of each member, and each manager, if any.
 "(2) A copy of the filed articles of organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any documents have been executed.
 "(3) Copies of the limited liability company's federal, state, and local income tax returns and reports, if any, for the three most recent years.
 "(4) Copies of any then effective operating agreements including any amendments thereto.
 "(5) Copies of any financial statements of the limited liability company for the three most recent years.
 (b) Those records, and any other books and records of the limited liability company, wherever situated, are subject to inspection and copying for any proper purpose at the reasonable request, and at the expense of, any member or the member's agent or attorney during regular *Page 794 
business hours. Any agent, member, or manager of a limited liability company who, without reasonable cause, refuses to allow any member or the member's agent or attorney to inspect or copy any books or records of the limited liability company for any proper purpose shall be personally liable to the member for a penalty in an amount not to exceed 10 percent of the fair market value of the membership interest of the member, in addition to any other damages or remedy."
(Emphasis added.)
In their complaint, the Fogartys allege that Parker Poe was acting as an agent of Confederate Money and that it, without reasonable cause, refused to allow the Fogartys to inspect certain records even though the Fogartys were members of the limited liability company. If proven, these facts could support a claim for relief under § 10-12-16, Ala. Code 1975. Therefore, the motion to dismiss should not have been granted as to count 10.
Count 11 alleges violations under the Alabama Business Corporation Act. This allegation may be construed to include violations of § 10-2B-16.02, Ala, Code 1975, which provides, in part:
 "(a) A shareholder of a domestic corporation or of a foreign corporation with its principal office within this state is entitled to inspect and copy, during regular business hours at the corporation's principal office, or if its principal office is outside this state, at a reasonable location within this state, specified by the corporation, any of the records of the corporation described in Section 10-2B-16.01(e) if he or she gives the corporation written notice of his or her demand at least five business days before the date on which he or she wishes to inspect and copy.
 "(b) A shareholder of a domestic corporation or of a foreign corporation with its principal office within this state who shall have been a holder of record of shares for 180 days immediately preceding his or her demand or who is the holder of record of at least five percent of the outstanding shares is entitled to inspect and copy during regular business hours at a reasonable location within this state specified by the corporation, or in the case of accounting records of the corporation, if the records are maintained outside the state and inspection and copying within this state is impracticable, at a reasonable location outside the state specified by the corporation, for any proper purpose, all of its books, papers, records of account, minutes and record of shareholders, if the shareholder gives the corporation written notice of his or her demand, stating the purpose therefor, at least five business days before the date on which he or she wishes to inspect and copy. . . .
 "(c) Any officer or agent who, or a corporation which, without reasonable cause, shall refuse to allow any such shareholder, or his or her agent or attorney so to examine and make copies of and extracts from its books, papers, records of account, minutes and record of shareholders, for any proper purpose, shall be liable to such shareholder for a penalty of an amount not to exceed 10 percent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him or her by law. It shall be a defense to an action brought to collect the penalty specified in this section that the person suing therefor within the two years next preceding the demand has sold or offered for sale any list of shareholders of such corporation, or any other corporation or knowingly has aided or abetted any person in procuring any list of *Page 795 
shareholders, or improperly has used any information secured through any prior examination of the books, papers, records of account, minutes or record of shareholders, or was not acting in good faith or for a proper purpose in making this demand."
(Emphasis added.)
Again, under the facts alleged in the complaint, the Fogartys contend that Parker Poe was acting as "an agent" who obstructed the Fogartys from examining certain records. If proven, these facts could support a claim for relief. Therefore, the motion to dismiss for failure to state a claim should not have been granted as to count 11.
Finally, count 14 alleges that Parker Poe was engaged in the unauthorized practice of law and that there existed a causal connection between this practice and the injuries suffered by the Fogartys. As discussed earlier, contrary to Parker Poe's allegation, Alabama does recognize such a cause of action. The facts alleged by the Fogartys may support a claim for relief; thus, the motion to dismiss should not have been granted as to count 14. Furthermore, as already discussed, this claim was the only claim that specifically referenced Parker Poe, and Parker Poe appears to concede that if Alabama recognizes such a cause of action then the Fogartys have stated a claim upon which relief could be granted.
 Conclusion
We express no opinion on the merits of the case; however, we affirm the trial court's dismissal for failure to state a claim as to counts 1-6, 9, 12, and 13, and we reverse as to counts 7, 8, 10, 11, and 14. We remand the cause for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and WOODALL, STUART, and PARKER, JJ., concur.
LYONS, J., recuses himself.
[1] Count 1 seeks a preliminary injunction to freeze the assets of the real-estate venture, and it is not alleged that Parker Poe has any control over the spending of those assets. Count 2 seeks a judgment declaring the interest of each party in the various limited liability companies, and it is undisputed that Parker Poe does not have any ownership interest in any of the limited liability companies. Count 3 seeks money owed the Fogartys from capital contributions made toward the real-estate venture. Parker Poe does not control the funds of the real-estate venture, and, based on the facts alleged in the complaint, there is no indication that Parker Poe had any involvement whatsoever in the alleged capital contributions. Counts 4 and 5 allege oppression and breach of fiduciary duty by the majority shareholders in the real-estate venture, and Parker Poe is not a shareholder in the venture. Count 6 alleges conversion of funds, and it is apparent from the factual allegations in the complaint that this allegation concerns conversion of the assets of the venture by the majority shareholders, not Parker Poe, for their own personal use. Count 9 alleges civil theft/embezzlement, again stemming from the alleged personal use of funds dedicated to the venture by the majority shareholders, not Parker Poe. Count 12 specifically alleges that "Southworth, the Beardens, [Gerald] McGill, [Eric] Nelson, and/or [Robert] Young" in their capacities as "stockholders, officers or managers" of the real-estate venture abused the corporate and limited-liability forms of the various entities involved in the venture for their own personal advantage. Parker Poe is not named in that count, and there are no factual allegations in the complaint that Parker Poe is a stockholder, officer, or manager of any of the entities involved in the venture .or that Parker Poe made personal use of the corporate or limited-liability form of any of those entities. Finally, count 13 is a derivative action directed specifically at the "directors, officers, and/or managers" of the real-estate venture, and again it is not alleged that Parker Poe fits any of those descriptions.