984 So.2d 1179 (2007)
Robert Lee SMITH, Sr.
v.
Leonard Norman MATH.
2060415.
Court of Civil Appeals of Alabama.
November 16, 2007.
*1180 Robert Lee Smith, Sr., pro se.
Frank J. Stakely and R. Brett Garrett of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellee.

On Application for Rehearing
THOMPSON, Presiding Judge.
This court's opinion of August 17, 2007, is withdrawn, and the following is substituted therefor.
Robert Lee Smith, Sr., appeals from the trial court's summary judgment on his claims against Leonard Norman Math. *1181 The issues raised on appeal require this court to decide whether the trial judge erred in failing to recuse himself from the case and whether the Alabama Legal Services Liability Act ("ALSLA"), §§ 6-5-570 to 6-5-581, Ala.Code 1975, applies to Smith's claims.
Math is an attorney who practices law in Montgomery County. On March 22, 2004, Math, on behalf of his client Max Federal Credit Union ("Max"), filed a collection action against Smith in the Montgomery District Court ("the Max action"). On December 9, 2004, Math obtained a default judgment in favor of Max against Smith in the amount of $2,767.71. On December 17, 2004, Smith filed a motion to set aside the default judgment due to ineffective service of process of the complaint. The district court granted Smith's motion on the same day; it set aside the default judgment and reset the case on the district court's docket.
Although the default judgment had been set aside on December 17, 2004, on December 28, 2004, Math recorded the default judgment against Smith in the Montgomery County Probate Court. The district court later heard the merits of the case, and on January 19, 2005, it entered a final judgment against Smith and in favor of Max. On February 2, 2005, Math recorded the January 19, 2005, judgment in the Montgomery County Probate Court. Thus, two virtually identical judgments against Smith  the December 9, 2004, judgment and the January 19, 2005, judgment  were then on record with the Montgomery County Probate Court. The record does not contain any evidence tending to indicate that Math attempted to correct the erroneous recording of the December 9, 2004, judgment. Smith stated in his affidavit that he had made numerous requests to Math to correct the erroneous recording of the December 9, 2004, judgment but that Math had failed to take any remedial action.
On November 4, 2005, Smith filed a pro se complaint against Math in the Montgomery Circuit Court ("the trial court"). The complaint contained two counts. In addition to the basic facts set forth above, Smith alleged in the first count that Math had "recorded the default judgment on December 28, 2004, although it had been set aside by the district court and all parties were provided notice of the default judgment being set aside." Smith further alleged that "after he discovered that the default judgment had been recorded, he made numerous requests to [Math] to rescind the recordation of" the December 9, 2004, judgment. Regarding damages, Smith alleged that "the recording by [Math] of the default judgment that had been set aside was fraudulent and the recording of the judgment had an adverse effect on [Smith] as it relat[es] to his business affairs" and that, "because of the recordation, he had to devote his time and energy in attempting to correct the recording of an invalid judgment and the recorded judgment deprived him of the use of certain funds." Smith sought $25,000 in damages on count one.
In count two of his complaint, Smith alleged that after the January 19, 2005, judgment in the Max action had been recorded, $2,950.75 was garnished from his wages. Smith alleged that Math never took the steps necessary to secure the garnished funds and satisfy the judgment and that, as a result, postjudgment interest continued to accrue even though he had already paid enough to satisfy the judgment. Smith also alleged that Math refused to refund "the overpayment" and thereby deprived him of the use of the funds. Smith sought $25,000 in damages on the second count.
*1182 Four of the Montgomery County circuit judges recused themselves from the case, and the matter was ultimately assigned to Circuit Judge Charles Price. Math filed a motion for a summary judgment on October 16, 2006. Citing Valentine v. Watters, 896 So.2d 385 (Ala.2004), Math argued that Smith had stated claims of legal malpractice under the ALSLA. According to Math, he was entitled to a summary judgment because Smith was never his client. Math also argued that he was entitled to a summary judgment because Smith had not presented expert testimony showing that Math had breached the applicable standard of care. To support his motion, Math submitted his own affidavit, in which he stated:
"In representing Max Federal Credit Union in an action against Robert Lee Smith, Sr. (CV-04-2168), I was practicing within my specialty as a collections attorney. I am familiar with the standard of care applicable to collections attorneys in general and specifically, under the same or similar circumstances as presented by my representation of Max Federal Credit Union in (CV-04-2168), I met or exceeded the applicable standard of care. I exercised the same degree of care, skill, and diligence that other collections attorneys would have exercised in a like or similar case."
According to Math, his affidavit was prima facie evidence establishing that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law.
On November 9, 2006, two days after the trial court had set Math's summary-judgment motion for a hearing, Smith filed a written response to Math's summary-judgment motion. Relying primarily on Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800 (Ala.1999), Smith, still acting pro se, argued that his claims were governed by general tort law, not the law relating to legal malpractice. Both parties agreed that Smith had never received legal services from Math. Smith supported his response with an affidavit and documentary evidence relating to the Max action.
On November 14, 2006, Smith filed a motion to recuse in which he argued that Math had practiced law in Montgomery County for many years and that, as a result, Math "had occasion to appear before the Judge and interact with him on other occasions." Smith did not specify what those "other occasions" were. Smith sought the judge's recusal "because it would eliminate any appearance of a conflict of interest." Smith subsequently filed a motion to continue the hearing on Math's motion for a summary judgment.
The trial court set Smith's motion to recuse for a hearing, but it did not rule on his motion to continue. On December 19, 2006, Smith filed a written request that the hearing on his motion to recuse be waived. In that request, Smith stated that the trial judge would know what contacts the judge had had with Math and what the judge's motivations were, according to Smith, for "persist[ing] in hearing this case contrary to the motion for recusal." In an order dated December 18, 2006, the day on which the hearing on Math's summary-judgment motion had been set, the trial court denied Smith's motion to recuse and granted his motion to continue the hearing on Math's motion for a summary judgment. The order was not filed in the trial-court clerk's office until December 19, 2006.
Smith subsequently filed a "Notice of Non-Appearance at Hearing" in which he advised the trial court that he would not attend the hearing on Math's summary-judgment motion and would rely instead on the arguments set out in his written *1183 response to the motion. In that notice, Smith voiced his belief that the trial judge was biased against him because the judge had set Math's summary-judgment motion for a hearing before he had received Smith's written response to that motion. Smith also argued that the fact that his motion to recuse was apparently denied the day before he filed his request for a waiver of the hearing on that motion and the fact that his motion to continue the December 18, 2006, hearing was not granted until the day on which the hearing was set showed bias on the part of the trial judge. Finally, Smith argued that the fact that four other judges in the circuit had recused themselves from the case was evidence of bias on the part of the trial judge.
The hearing on Math's summary-judgment motion took place on January 26, 2007. Smith did not attend the summary-judgment hearing. At the hearing, Math's counsel argued that Smith's claims alleged legal malpractice and that the ALSLA required Smith to support his claims with expert testimony. Without citing any specific cases, Math's counsel argued that "the basic common law doctrine is that an attorney does not owe a duty to anyone unless it was his client." The trial court stated at the hearing that Smith "decided not to appear and not to respond." On January 26, 2007, the trial court entered an order granting Math's motion for a summary judgment. Still acting pro se, Smith filed a timely notice of appeal to this court.

Smith's Motion to Recuse
We first consider whether the trial judge erred in failing to recuse himself from this action. "Review of the denial of a motion to recuse is appropriate either upon a petition for a writ of mandamus or upon an appeal from a final judgment." General Motors Corp. v. Jernigan, 883 So.2d 646, 673 (Ala.2003).
"A trial judge's ruling on a motion to recuse is reviewed to determine whether the judge exceeded his or her discretion. See Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala.2003). The necessity for recusal is evaluated by the `totality of the facts' and circumstances in each case. [Ex parte City of] Dothan Pers. Bd., 831 So.2d [1,] 2 [(Ala.2002)]. The test is whether `"facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge."' In re Sheffield, 465 So.2d 350, 355-56 (Ala.1984) (quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982))."
Ex parte George, 962 So.2d 789, 791 (Ala. 2006).
Based upon the facts presented to us in the record, we cannot say that the trial judge's act of setting Math's motion for a summary judgment for a hearing before receiving Smith's written response to that motion is evidence of bias. Indeed, in doing so, the trial judge afforded Smith an opportunity to be heard on Math's motion. We do not see, and Smith does not explain, how such an action can be construed as an act of bias against Smith.
The fact that Math had practiced law in Montgomery County and previously appeared before the trial judge did not, of itself, warrant the judge's recusal even in light of the fact that other judges in the circuit had recused themselves. See, e.g., Ex parte Atchley, 936 So.2d 513 (Ala.2006). In Atchley, after both circuit judges in Marshall County had recused themselves, the legal-malpractice action was assigned, pursuant to a standing order, to the county's district judge. The supreme court reviewed Canon 3.C.(1), Canons of Judicial Ethics, and then stated:
"Atchley contends that Judge Riley cannot `legally' preside over this case *1184 because, he says, `Defendant Fuller has practiced in Judge Riley's courtroom on countless cases and Judge Riley and Fuller have an affinity relationship, are members of the same bar association, and decided opinions would compromise Judge Riley's ability to look to the issues and evidence in the case versus his opinions.' . . . Atchley does not describe Fuller and Judge Riley's `affinity relationship' nor does he present any facts that would reasonably call into question Judge Riley's impartiality with respect to Atchley. Atchley fails to distinguish the relationship between Fuller and Judge Riley from the typical attorney-judge relationship. Thus, the facts as presented by Atchley's petition do not support his argument that Judge Riley cannot preside over his case impartially."
Atchley, 936 So.2d at 517. Similarly, Smith's assertion that Math "had occasion to appear before the Judge and interact with him on other occasions" is not a sufficient showing of facts that would reasonably call into question the trial judge's impartiality with respect to Smith. Smith has failed to distinguish the relationship between Math and the trial judge from the typical attorney-judge relationship, and, therefore, the facts do not support Smith's assertion that the trial judge cannot preside over the case impartially.
Finally, Smith cites the different dates on the trial court's order granting Smith's motion to continue and denying his motion to recuse as evidence of bias on the part of the trial judge. Although the differing dates are curious, neither the order nor its timing call the trial judge's impartiality into question. Accordingly, the trial court did not err in denying Smith's motion to recuse.

Math's Motion for a Summary Judgment
We next consider whether the trial court erred in granting Math's motion for a summary judgment.
"This court reviews a summary judgment de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). `When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact.' Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999). `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmoving party and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990)."
Bell v. Owens, 960 So.2d 681, 683-84 (Ala. Civ.App.2006).
The ALSLA creates a form of action against legal-service providers. Section 6-5-572(2), Ala.Code 1975, defines a legal-service provider as: "Anyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama." It is undisputed that Math is a legal-service provider.
*1185 Section 6-5-573, Ala.Code 1975, provides: "There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal-service-liability action and shall have the meaning as defined herein." Section 6-5-572(1) defines a legal-service-liability action as:
"Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. . . . A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."
Based on the language of § 6-5-572(1), Math argues that the ALSLA applies to Smith's claims. Both of Math's arguments regarding summary judgment are founded on this proposition. First, Math argues that he did not owe a legal duty to Smith under the ALSLA because Smith was never his client. In response, Smith concedes that Math never represented him, but he argues that, precisely for that reason, the ALSLA does not apply to his claims. Second, Math's argument that Smith failed to present expert testimony showing a breach of the applicable standard of care rests upon the premise that Smith's claims allege legal malpractice and thus require such evidence. The primary issue for us to consider, therefore, is whether Smith's complaint states general tort claims or claims of legal malpractice under the ALSLA.
In Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800 (Ala. 1999), our supreme court explored the limits of the language of § 6-5-572(1), Ala. Code 1975. It decided the question "whether any claim against an entity that is a `legal service provider'  even a claim not related to that entity's activities in providing legal services  must be brought under the ALSLA." 727 So.2d at 803. The court held that "[t]he answer is no." Id. Cunningham involved a dispute over a fee-splitting agreement between a lawyer and a law firm. In addressing whether the ALSLA applied to the lawyer's claims against the firm based on the fee-splitting agreement, the supreme court stated: "The language of the ALSLA makes it clear that that Act refers to actions against `legal service providers' alleging breaches of their duties in providing legal services. Conversely, from a plaintiff's perspective, the ALSLA applies to any claim originating from his receipt of legal services." Id. (second emphasis added). After a lengthy and thoughtful analysis of the history of the ALSLA, the supreme court concluded: "[T]he ALSLA does not apply to an action filed against a `legal service provider' by someone whose claim does not arise out of the receipt of legal services." Cunningham, 727 So.2d at 804 (emphasis added).
Based on this language from Cunningham, Smith argues that the ALSLA does not apply to his claims. Notably, although the language Smith relies on may be read broadly, the factual situation presented to the supreme court in Cunningham involved a disagreement regarding a fee-splitting arrangement. Despite its broad language, therefore, the court did not address the situation presented in this case, where a nonclient has alleged injury resulting from an attorney's performance of legal services to a third party.
In 2001 and 2002, two and three years after its decision in Cunningham, the supreme court decided two related cases. First, in a no-opinion affirmance, the supreme *1186 court affirmed a trial court's application of the ALSLA to a case similar to the case now presented to this court. See Averette v. Fields (No. 1992171, May 18, 2001), 824 So.2d 85 (Ala.2001) (table). The supreme court later described the Averette case in its opinion in Morrow v. Gibson, 827 So.2d 756 (Ala.2002). The court stated that in Averette the action had been brought by two heirs of an estate against the attorney who represented the estate. The defendant attorney argued that the action was governed by the ALSLA and was therefore time-barred. In response, the plaintiffs alleged that they "were not the recipients of [the attorney's] legal services, but [that] actions he allegedly took while providing legal services for a third party profoundly affected them." Morrow, 827 So.2d at 763. The trial court refused to extend the language of Cunningham to that factual situation, and instead it dismissed the case and awarded an attorney fee to the defendant and against the plaintiffs' attorney pursuant to the Alabama Litigation Accountability Act, §§ 12-19-270 to XX-XX-XXX, Ala.Code 1975 ("the ALAA"). The supreme court affirmed the trial court's judgment as to the ALSLA issue without an opinion. See Averette, supra; Morrow, supra.
The plaintiffs' attorney then separately appealed the trial court's award of an attorney fee under the ALAA to the defendant. The supreme court decided the issues presented by the plaintiffs' attorney in Morrow v. Gibson, supra. As part of its analysis in that appeal, the supreme court stated: "No case before this action has specifically dealt with the question whether an action filed against an attorney by a nonclient and arising out of that attorney's rendition of legal services to a third party was subject to the ALSLA." 827 So.2d at 763. This is the precise situation presented to this court in this appeal.
In Morrow, the supreme court noted that the language in Cunningham "can reasonably be read to suggest the view that the ALSLA applies only to proceedings commenced against the legal-service provider by one who had received legal services, that is, one to whom legal services had been rendered." 827 So.2d at 763. On this basis, the supreme court found that the plaintiffs' argument in the underlying case was not without substantial justification or groundless in law. The supreme court therefore reversed the trial court's award of an attorney fee. The court, however, did not find that the language in Cunningham should be extended to claims asserted against legal-service providers by individuals who had not themselves received legal services but who were adversely affected by the attorney's provision of legal services to a third party.
In Valentine v. Watters, 896 So.2d 385 (Ala.2004), two years after the supreme court decided Morrow, the supreme court declined to extend the language and reasoning of Cunningham to an attorney's misrepresentations to a future client during an initial interview. The supreme court stated: "The ALSLA applies to any claim originating as the result of the plaintiff's receipt of legal services." 896 So.2d at 391. Notably, for our purposes, Valentine did not address the situation in which the plaintiff never received legal services from the attorney defendant.
Before 2004, therefore, it is apparent that no supreme court opinion addressed the precise issue now presented to this court. Most recently, however, the supreme court analyzed whether the ALSLA applied to an action in which the plaintiffs asserted claims of fraud, suppression, misrepresentation, conspiracy to defraud, and conspiracy to suppress against a law firm and two of its members. Fogarty v. Parker, Poe, Adams, & *1187 Bernstein, L.L.P., 961 So.2d 784 (Ala. 2006), as modified on denial of rehearing (Jan. 12, 2007). In Fogarty, the plaintiffs were shareholders in certain closely held companies. They alleged that the defendant attorneys, while representing a failed business venture and/or one of the closely held companies, wrongfully suppressed certain business information and financial records and misrepresented other facts to them. The defendants argued that the plaintiffs' claims were barred because "it affirmatively appeared from the complaint that the Fogartys were not clients of [the law firm] for purposes of a legal-malpractice action because, [the complaint] alleged, the Fogartys were not in privity with [the firm]. . . ." 961 So.2d at 787. The defendants also argued that the plaintiffs' claims "arose out of the rendition of legal services" and that the plaintiffs' "exclusive remedy for such claims" is under the ALSLA. 961 So.2d at 787.
The trial court granted the defendants' motion to dismiss, and the plaintiffs appealed to the supreme court. The supreme court reviewed relevant portions of the ALSLA, and also the court's decision in Cunningham, supra, and reversed the trial court's judgment. 961 So.2d at 789, 795. Specifically, the supreme court stated:
"After a thorough examination of the language of the entire act, this Court [in Cunningham] held that `the ALSLA does not apply to an action filed against a "legal service provider" by someone whose claim does not arise out of the receipt of legal services.' Cunningham, 727 So.2d at 804 (emphasis added).
"[The fraud, suppression, and certain other counts] of the complaint do not allege tortious conduct resulting from the receipt of legal services by the Fogartys from [the law firm]. Also, [the law firm], in arguing that no `privity' existed between itself and the Fogartys, expressly states that it never provided legal services to the Fogartys. Therefore, it appears that the ALSLA does not apply to the Fogartys' claims; thus, it cannot be, as [the law firm] asserts, their exclusive remedy."
961 So.2d at 789. The supreme court thus extended the language in Cunningham to apply to a case in which the plaintiffs had not received legal services but were adversely affected by the attorney's providing legal services to a third party. 961 So.2d at 789.[1]
Math argues that Cunningham and Fogarty do not apply to this case because, he asserts, unlike him, the attorneys in those cases were not providing legal services.[2] However, Cunningham and Fogarty both expressly state that the ALSLA did not apply because the plaintiffs in those cases had not received legal services from the defendant attorneys. Although Math may have been providing legal services, it is undisputed that Smith did not receive them. This is the fact that the supreme court found determinative in Cunningham and Fogarty. Therefore, the cases are not distinguishable, as Math suggests.
This action does present a difficult situation. Math has been sued in his professional capacity for actions he took in the course of representing a client. Yet it is undisputed that Smith was not that client *1188 and did not receive legal services from Math. We are not unmindful of the competing policy interests at issue. However, this action presents us with a situation much like that presented to the supreme court in Fogarty. The plaintiffs in Fogarty, like Smith, asserted tort claims against the defendant attorneys for actions they took during their representation of a third party. Furthermore, like the defendants in Fogarty, Math has argued that the ALSLA applied to Smith's claims but that Smith was never his client and that he never provided legal services to Smith.
We are bound by the precedent established by our supreme court. See § 12-3-16, Ala.Code 1975; and Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala. Civ.App.2004). Therefore, based on the supreme court's decision in Fogarty, supra, we must hold that the ALSLA did not apply to Smith's claims.
Math also argues that he owed no duty to Smith, even under the general common law, because Smith was never his client. To support this assertion, Math relies on Sessions v. Espy, 854 So.2d 515 (Ala.2002), Peterson v. Anderson, 719 So.2d 216 (Ala.Civ.App.1997), and Shows v. NCNB National Bank of North Carolina, 585 So.2d 880 (Ala.1991). However, unlike the claims in this case, the claims in Sessions, Peterson, and Shows were based on specific allegations of legal malpractice or an attorney-client relationship.
In Sessions, the plaintiffs' claims were based on the existence of an attorney-client relationship between the plaintiffs and the defendant attorney. 854 So.2d at 522. In other words, the claims alleged the breach of a duty arising out of an attorney-client relationship. The supreme court held that because the attorney-client relationship did not exist, the defendant did not owe the plaintiffs a duty, as the plaintiffs had alleged. 854 So.2d at 522-23.
In Peterson and Shows, the plaintiffs asserted legal-malpractice claims. In Peterson, this court held that the beneficiaries of an estate had "no standing to maintain a legal service liability action against" the lawyer who had represented the decedent. 719 So.2d at 218-19 (emphasis added). In Shows, the supreme court stated: "A person authorized to practice law owes no duty except that arising from contract or from a gratuitous undertaking." 585 So.2d at 882. Although this statement may be read broadly, as Math asserts, we must consider the fact that it was decided in a case in which non-client plaintiffs alleged that the defendant attorney had committed legal malpractice as to them.
Cunningham and Fogarty, both cases decided after Peterson and Shows, make it clear that not all valid claims against legal-service providers are legal-malpractice claims. In this case, Smith has not asserted that Math committed legal malpractice or that Math owed him a duty arising out of an attorney-client relationship. Therefore, Sessions, Peterson, and Shows are materially distinguishable from this case, and Math's argument the he owed no duty to Smith not to engage in tortious behavior is unsupported.
Although Smith's complaint is not artfully pleaded, it sufficiently states claims of common-law negligence, if not fraud, against Math. Indeed, the record on appeal shows that Math recorded two virtually identical judgments against Smith, one of which had been set aside before it was recorded. The record does not show that Math made any attempts to correct the error. Based on the foregoing, we must conclude that the trial court erred in granting Math's motion for a summary judgment, which was based on the premise *1189 that the action was governed by the ALSLA. Therefore, we reverse the trial court's judgment and remand the action to the trial court for further proceedings consistent with this opinion. The trial court did not err in denying Smith's motion to recuse.
OPINION OF AUGUST 17, 2007, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the rationale in part and concurs in the result, with writing.
BRYAN, Judge, concurring in the rationale in part and concurring in the result.
I concur with the main opinion's holding that "the trial court did not err in denying Smith's motion to recuse," 984 So.2d at 1184, and in the rationale for that holding. I concur in the result as to the main opinion's decision to reverse the trial court's summary judgment.
NOTES
[1] As an additional ground for its holding, the supreme court also stated that the ALSLA was not the plaintiffs' exclusive remedy because the lawyers in that case were not licensed to practice law in Alabama. See 961 So.2d at 789.
[2] Math argues that the attorneys in Fogarty were not "providing legal services" because they were not licensed to practice law in Alabama.