WOODALL, Justice.
 

 Barbara Roberts sued Steve Lanier (“Lanier”), Steve Lanier, P.C. (“the firm”), Rodney Loring Stallings (“Stallings”), and Coggin
 
 &
 
 Stallings, L.L.C. (“Coggin”), asserting claims related to Lanier’s and Stallings’s representation of Roberts regarding a certain criminal matter in Alabama.
 
 [1]
 
 The circuit court entered summary judgments in favor of Lanier and the firm, Stallings, and Coggin. We affirm in part and reverse in part, and we remand the case to the circuit court for further proceedings.
 

 Facts and Procedural History
 

 On April 21, 2006, Roberts was arrested on a charge of murder and was placed in the Cherokee County, Alabama, jail. She contacted Lanier, an attorney licensed to practice law in Georgia, who was then representing Roberts on a misdemeanor charge in Georgia. Lanier has been doing business as Steve Lanier, P.C., since 1997 and is the sole attorney associated with the firm.
 

 Lanier traveled to Cherokee County and met with Roberts while she was in the Cherokee County jail. Roberts and Lanier executed an employment agreement, by which Lanier agreed to provide legal services to Roberts in Alabama on the then
 
 *1177
 
 pending charge of noncapital murder (“the contract”). The contract provided that Roberts would pay Lanier a “nonrefundable retainer” of $50,000 for his services.
 
 [2]
 
 Roberts also executed a power of attorney to allow Lanier to withdraw $50,000 from her bank accounts. Shortly thereafter, Lanier withdrew the $50,000 from Roberts’s accounts and, according to his deposition testimony, deposited the money in the firm’s business account, not its trust account.
 

 Roberts claims that, at the time they executed the contract, Lanier “failed to disclose to [her] that he was not licensed [to practice law] in Alabama; that he would have to associate local counsel in Alabama on the case in order to seek permission to be allowed to participate in the case; and that Roberts would be solely responsible for Alabama counsel’s fees.” Roberts’s brief, at 15. Lanier testified that “he explained to [Roberts] in their initial meeting or within a few days thereafter that since he was not licensed in Alabama, he would be required to apply for permission to represent her, and that an Alabama attorney would have to be involved in her defense.” Lanier and the firm’s brief, at 7.
 

 After meeting with Roberts, Lanier associated Stallings as local counsel. At that time, Stallings was a member at Coggin, which was dissolved in December 2008.
 

 Roberts says that on April 27, 2006, at a hearing in the Cherokee District Court on her noncapital-murder charge, she learned for the first time that Lanier was not licensed to practice law in Alabama and that Stallings had been associated on her case. She says that Stallings told her at the hearing that she would have to enter into a separate fee agreement with him. Roberts alleges that on May 1, 2006, she executed a fee agreement with Stallings, thereby agreeing to pay him $85,000 to represent her on the noncapital-murder charge. Lanier responds that there is no written contract between Roberts and Stallings in the record and that he paid Stallings $5,000 out of the $50,000 he had withdrawn from Roberts’s accounts.
 

 Roberts says that on May 1, 2006, she attempted to terminate Lanier’s representation because she saw no need for' two attorneys to represent her on the noncapi-tal-murder charge. According to Roberts, she requested a refund of the $50,000 previously withdrawn from her bank accounts by Lanier as his “nonrefundable” retainer. Roberts also says that Lanier told her that “based on the ‘non-refundable’ retainer language of his employment contract she was not entitled to a refund of any fees. Lanier further explained that Roberts might as well let him continue working on her case since she would not be receiving a refund of any fees even if he was terminated.” Roberts’s brief, at 19. Roberts says she then agreed to allow Lanier to continue his representation until his billable hours equaled $50,000 or she was indicted for capital murder, whichever came first.
 

 In July 2006, Lanier filed an application for
 
 pro hac vice
 
 admission in order to appear as counsel in Roberts’s case.
 
 [3]
 
 He was granted
 
 pro hac vice
 
 status on August 3, 2006. That same day, the district court finished its preliminary hearing on Roberts’s noncapital-murder charge and sent
 
 *1178
 
 her case to the grand jury. Stallings alone was present to represent Roberts at the preliminary hearing in the district court.
 

 On November 2, 2006, the grand jury indicted Roberts for capital murder. Roberts was returned to the Cherokee County jail, where she was held without bond. Roberts claims that
 

 “at Stallings’[s] request, Roberts had all of her mail forwarded to [his] law office so that Stallings could tend to and oversee every aspect of Roberts’[s] personal life, to include but not limited to: the payment of all of her monthly bills and expenses. At Stallings’[s] request, Roberts also relinquished her banking account information and check book(s) to Stallings.
 

 “Thereafter, Stallings would periodically appear at the Cherokee County Jail and have Roberts sign blank cheeks for the stated purpose of using the checks to pay Roberts’[s] monthly bills and expenses (i.e., home utilities, credit card bills, etc.) and expenses associated with Roberts’s criminal case.”
 

 Roberts’s brief, at 21.
 

 Roberts alleges that, instead of using the blank checks for purposes she had intended, Stallings made the checks payable to himself and took the funds for his personal use. She claims that, between November 2006 and October 2008, Stall-ings misappropriated approximately $100,000 of her funds.
 

 On November 2, 2006, Lanier met with Roberts and presented her with a second employment contract, which provided that Roberts would pay Lanier an additional $50,000 “nonrefundable retainer” to represent her on the capital-murder charge. Roberts refused to sign the second contract. Lanier testified in his deposition that he continued to work on the case under the assumption that Roberts wanted him to continue and that he ultimately would be retained by her. He withdrew from representing Roberts in March 2007.
 

 Roberts was ultimately convicted of capital murder and was sentenced to life imprisonment without the possibility of parole. On February 10, 2009, in consultation with another attorney, Roberts says she learned for the first time that the nonrefundable-retainer language in the contract is unenforceable in Alabama and that Lanier’s reliance on that language in refusing to refund any part of the fee to Roberts was improper.
 

 Eight days later, on February 18, 2009, Roberts filed a legal-malpractice action in the Cherokee Circuit Court, naming Lanier, the firm,
 
 [4]
 
 and Stallings as defendants. Roberts amended her complaint to add a claim requesting a declaratory judgment and to add the Alabama State Bar
 
 [5]
 
 and Coggin as defendants. All the circuit judges in Cherokee County recused themselves, and the case was assigned to Eto-wah Circuit Judge Clark Hall.
 

 Lanier and the firm (hereinafter sometimes referred to collectively as “the Lanier defendants”) moved the circuit court to “dismiss that portion of the First Amended Complaint which purports to be a ‘declaratory judgment action’; or alternatively, to strike therefrom all allegations which make any reference to the Alabama Rules of Professional Conduct.” Stallings filed a counterclaim against Roberts, seeking $457,500 on eight open-account claims. Roberts opposed the Lanier defendants’ motion to dismiss and moved the circuit court to dismiss Stallings’s counterclaim.
 
 *1179
 
 On August 7, 2009, the circuit court denied Roberts’s motion to dismiss Stallings’s counterclaim and granted the Lanier defendants’ motion to strike “all allegations of [Roberts’s] First Amended Complaint which invoke or allege violations of the Rules of Professional Conduct.” The circuit court also stated that Roberts’s request for a declaratory judgment as to Lanier’s alleged unauthorized practice of law was severed and would be considered in a separate bench trial.
 

 On August 18, 2009, Roberts moved the circuit court for a partial summary judgment against the Lanier defendants. The circuit court denied that motion. Stallings moved the circuit court to dismiss his counterclaim against Roberts. The counterclaim was dismissed on April 6, 2010.
 

 On May 4, 2010, Roberts filed a second amended complaint, reasserting claims from the first amended complaint, including those that had been dismissed by the circuit court’s August 7 order. Roberts also added a fraud claim against Lanier and a malicious-prosecution claim against Stallings with regard to his earlier counterclaim.
 

 The Lanier defendants moved the circuit court to strike the allegations in the second amended complaint that involved alleged violations of the Alabama Rules of Professional Conduct. The circuit court granted that motion. Roberts then moved the circuit court to clarify its order, arguing that the order struck matters that did not refer to the Rules of Professional Conduct, including Roberts’s request for a judgment declaring that “the ‘non-refundable retainer’ language of Defendant Lanier’s employment contract is unconscionable and against the public policy and law in Alabama” and that Lanier had engaged in the unauthorized practice of law. The circuit court entered an order, purporting to clarify its earlier order, stating, in pertinent part:
 

 “It is the understanding of the Court that all tort and common law claims are recast into [the Alabama Legal Services Liability Act, § 6-5-570
 
 et seq.,
 
 Ala. Code 1975 (‘ALSLA’),] and [it is] the plaintiffs burden to show a breach of the standard of [care]. Also, that ... [§ ] 6-5-578[, Ala.Code 1975,] prohibits the referencing of the Code of Professional Conduct.”
 

 Stallings moved the circuit court to dismiss the malicious-prosecution claim for failure to state a claim upon which relief could be granted. The circuit court conditionally granted the motion. Coggin also moved the circuit court to dismiss the second amended complaint as to it for failure to state a claim against it.
 

 The Lanier defendants, Stallings, and Coggin each moved for a summary judgment. The circuit court granted those motions on July 23, 2010, and entered summary judgments in favor of the Lanier defendants, Stallings, and Coggin “on all claims” brought against them. The circuit court also found that, “[b]y virtue of summary judgments having been granted in favor of all defendants, the Court deems all other pending motions to be MOOT.” The circuit court went on to state: “No specific relief having been sought against the Alabama State Bar, the Court finds that all claims pending between and among the respective parties are fully resolved, and this Judgment is FINAL as to all claims and parties.” (Capitalization in original.)
 

 On July 30, 2009, Judge Hall resigned from the bench, and retired Circuit Judge Samuel H. Monk was appointed to preside over the case. Roberts moved the circuit court to alter, amend, or vacate the July 23 summary judgments. Judge Monk denied that motion.
 

 
 *1180
 
 Roberts now appeals, arguing that the circuit court erred in entering summary judgments in favor of the Lanier defendants, Stallings, and Coggin. She also argues that the circuit court erred in failing to grant her request for a judicial determination as to whether the nonrefundable-retainer language in the contract was unconscionable and against public policy and as to whether Lanier had engaged in the unauthorized practice of law.
 

 Standard of Review
 

 “This Court’s review of a summary judgment is de novo. We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. In making such a determination, we must review the evidence in the light most favorable to the non-movant. Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004) (quoting
 
 West v. Founders Life Assur. Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989) (citations omitted)).
 

 Analysis
 

 I.
 
 The Lanier defendants
 

 Roberts first argues that the circuit court erred in entering a summary judgment in favor of the Lanier defendants. The circuit court did not state the basis for its summary judgment in the Lanier defendants’ favor. However, Roberts argues that none of the grounds argued in the Lanier defendants’ motion for a summary judgment supports the circuit court’s judgment.
 

 In their motion, the Lanier defendants argued that Roberts’s claims are governed by the Alabama Legal Services Liability Act, § 6-5-570
 
 et seq.,
 
 Ala.Code 1975 (“the ALSLA”), and that Roberts had failed to prove a violation of the ALSLA because she had not presented expert testimony as to the alleged breach of the applicable standard of care, nor had she shown that, but for Lanier’s actions, the outcome of her case would have been different. The Lanier defendants also argued that Roberts’s claims against them were barred by the ALSLA’s two-year statute of limitations and that Roberts had not demonstrated that she had suffered any injury as a result of Lanier’s actions.
 

 We first address whether the ALSLA applies to the claims against the Lanier defendants. Section 6-5-573, Ala.Code 1975, provides: “There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein.”
 

 Section 6-5-572(2), Ala.Code 1975, defines a “legal service provider” as
 

 “[ajnyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations,
 
 *1181
 
 associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers.”
 

 Section 6-5-572(1), Ala.Code 1975, defines “legal service liability action” as
 

 “[a]ny action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider’s violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damage[ ] or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future.”
 

 Roberts argues that, pursuant to this Court’s rationale in
 
 Fogarty v. Parker, Poe, Adams & Bernstein, L.L.P.,
 
 961 So.2d 784 (Ala.2006), Lanier was not a “legal service provider” under the ALSLA because he was not licensed to practice law in Alabama. Therefore, she argues, the ALSLA does not apply to her claims against the Lanier defendants. In response, the Lanier defendants argue that
 
 Fogarty
 
 is distinguishable and that the ALSLA applies because Lanier was admitted
 
 pro hac vice
 
 to practice in Alabama.
 

 This Court recently addressed similar issues in
 
 Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.,
 
 42 So.3d 667 (Ala.2009). In that case, Wachovia Bank (“Wachovia”), which was being sued by Neal Greene, filed a third-party complaint against, among others, Jones, Morrison & Womack, P.C. (“Jones Morrison”), alleging claims under the ALSLA. The trial court entered a summary judgment in favor of Jones Morrison on Wachovia’s third-party complaint. The Court of Civil Appeals reversed the judgment and remanded the case to the trial court.
 
 SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.,
 
 939 So.2d 885 (Ala.Civ.App.2005). On remand, the trial court entered a judgment as a matter of law in Jones Morrison’s favor, stating that “the Bank had failed to prove by expert testimony the applicable standards of care and that the lawyers had allegedly breached those standards of care.”
 
 Wachovia,
 
 42 So.3d at 673-74. Wachovia appealed.
 

 On appeal, Jones Morrison, among other things, argued that it was not subject to liability under the ALSLA “because its attorneys were not licensed to practice in Alabama” and, therefore, “it was not acting as a ‘legal service provider’ under the circumstances of th[at] case.”
 
 Wachovia,
 
 42 So.3d at 675. Jones Morrison cited
 
 Fogarty
 
 in support of its argument. In
 
 Wachovia,
 
 we discussed our decision in
 
 Fogarty,
 
 noting that the appellees in that case — Parker, Poe, Adams & Bernstein, L.L.P. (“Parker Poe”) — had argued, among other things, that the Fogartys’ claims should have been brought under the ALSLA because, according to Parker Poe, it was engaged in the practice of law in Alabama. We went on to state:
 

 “In rejecting Parker Poe’s argument that it was ‘engaged in the practice of law in the State of Alabama,’ this Court stated:
 

 “ ‘Furthermore, it appears that the ALSLA applies only to attorneys who are licensed to practice law in Alabama. Parker Poe argues that it was “engaged in the practice of law in the State of Alabama” and, thus, falls under the second prong of the ALSLA’s definition of a legal-service provider. However, this Court has expressly
 
 *1182
 
 stated that “[t]he plain language of § 6-5-572(2), as well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers and to entities that are composed of members who are
 
 licensed
 
 to practice law within the State of Alabama.”
 
 Alabama Educ. Ass’n v. Nelson,
 
 770 So.2d 1057, 1059 (Ala.2000) (emphasis added).
 

 “ ‘According to the complaint, Jones and Baron[, two attorneys employed by Parker Poe,] were not licensed to practice law within the State of Alabama, and Parker Poe does not dispute this allegation. Thus, the ALS-LA would not apply to the claims against Parker Poe, and the ALSLA could not be the Fogartys’ exclusive remedy.... ’
 

 “961 So.2d at 789.
 

 “We disagree with Jones Morrison’s contention that under ...
 
 Fogarty
 
 it cannot be held liable under the ALSLA because none of its attorneys were licensed to practice law within the State of Alabama. First, unlike ... Parker Poe in
 
 Fogarty,
 
 Jones Morrison does not dispute that it was providing legal services to the Bank in the present case....
 

 “Second, to provide those legal services to the Bank, Jones Morrison in the present case agreed to perform work or services — such as relaying information between [Stokes, Clinton, Fleming & Sherling (‘Stokes Clinton’) ] and the Bank regarding the legal action to collect the debt — for the benefit of the Stokes Clinton firm in its rendering of legal services to the Bank. Stokes Clinton, as noted, is a legal-service provider under the ALSLA. Thus, unlike
 
 Fogarty,
 
 in the present case an attorney-client relationship existed between Jones Morrison and the Bank, and in offering legal services to the Bank, Jones Morrison sought the assistance of Stokes Clinton and agreed to perform work for the benefit of Stokes Clinton, itself a ‘legal-service provider’ under the ALSLA. Consequently, the question presented in this case — whether the ALSLA applies to claims against an attorney not licensed in Alabama who, in conjunction with an attorney licensed to practice in Alabama, performs legal services in Alabama for a client — was not at issue in Fogarty.... Thus, to the extent that language in
 
 Fogarty
 
 ... suggests that the ALSLA could not apply in such a scenario, that language was unnecessary to the holding[ ] in
 
 Fogarty
 
 ... and is not controlling here.”
 

 Wachovia,
 
 42 So.3d at 677-78. We went on to conclude:
 

 “Stokes Clinton is a ‘legal service provider’ under § 6-5-572(2) of the ALSLA because it is a ‘professional corporation[ ], association! ], [or] partnership[ ]’ that is ‘licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama.’ In view of its arrangement with the Stokes Clinton firm, Jones Morrison meets that part of the definition of a ‘legal service provider’ that includes ‘the persons, firms, or corporations either employed by or performing work or services
 
 for the benefit of
 
 such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers’ (emphasis added).
 

 “The Bank’s above-stated claims against Jones Morrison arise out of the attorney-client relationship that existed between Jones Morrison and the Bank and out of Jones Morrison’s provision of legal services to the Bank. Thus, the
 
 *1183
 
 ALSLA governs the Bank’s claims against Jones Morrison.”
 

 Wachovia,
 
 42 So.3d at 678-79 (footnote omitted).
 

 The position of the Lanier defendants in this case is very similar to the position of Jones Morrison in
 
 Wachovia.
 
 It is undisputed that Roberts’s “claims against [the Lanier defendants] arise out of the attorney-client relationship that existed between [the Lanier defendants] and [Roberts] and out of [the Lanier defendants’] provision of legal services to [Roberts].”
 
 Wachovia,
 
 42 So.3d at 678.
 

 Moreover, Lanier associated Stallings to assist him in representing Roberts. Stall-ings is licensed to practice law in Alabama and is, therefore, a legal-service provider under the ALSLA. Lanier’s billing statements, which are undisputed, show that, until his withdrawal in March 2007, Lanier worked with Stallings in representing Roberts on the pending criminal charge. The statements indicate that, among other things, Lanier performed legal research, participated in preparations for the preliminary hearing in the district court on the noncapital-murder charge, and reviewed various motions and other paperwork prepared by Stallings.
 

 The question presented in this case, as in
 
 Wachovia,
 
 is “whether the ALSLA applies to claims against an attorney not licensed in Alabama who, in conjunction with an attorney licensed to practice in Alabama, performs legal services in Alabama for a client.”
 
 Wachovia,
 
 42 So.3d at 677-78. As we noted in
 
 Wachovia,
 
 this question “was not at issue in
 
 Fogarty,”
 
 and, “[t]hus, to the extent that language in
 
 Fogarty
 
 ... suggests that the ALSLA could not apply in such a scenario, that language was unnecessary to the holding[ ] in
 
 Fogarty
 
 ... and is not controlling here.” 42 So.3d at 678.
 

 We conclude that Lanier, like Jones Morrison in
 
 Wachovia,
 
 “meets that part of the definition of a ‘legal service provider’ that includes ‘the persons, firms, or corporations either employed by or performing work or services
 
 for the benefit of’
 
 ” a legal-service provider under the ALSLA.
 
 Wachovia,
 
 42 So.3d at 678. Therefore, the ALSLA governs Roberts’s claims against the Lanier defendants.
 
 [6]
 

 Having determined that the ALSLA applies to the claims against the Lanier defendants, we now address whether the Lanier defendants were entitled to a summary judgment on those claims. In her second amended complaint, Roberts sought a judgment declaring that, among other things, the nonrefundable-retainer language in the contract was unconscionable and that Lanier had engaged in the unauthorized practice of law; she also alleged that Lanier had
 

 “breached his duty of care to Roberts in:
 

 “(a) misrepresenting to Roberts that he was qualified to represent her in the State of Alabama on the pending criminal charge;
 

 “(b) deceiving Roberts into executing a ‘non-refundable retainer’ employment contract under the pretense that such an agreement was valid and lawful;
 

 
 *1184
 
 “[(c)] misrepresenting to Roberts that under no circumstance, even if he were terminated, would Roberts be entitled to a refund of fees because the retainer of $50,000 was ‘non-refundable’; and
 

 “[ (d) ] converting funds belonging to Roberts, in the approximate sum of $50,000.00, to his own personal use.”
 

 Roberts argues that the circuit court erred in dismissing her request for a judgment declaring whether the “nonrefundable retainer” language in the contract was unconscionable and against Alabama public policy and whether Lanier had engaged in the unlawful practice of law in Alabama.
 
 [7]
 
 The first issue is moot in light of the Lanier defendants’ concessions that the “nonrefundable retainer” language is prohibited under Alabama law and that the contract was unenforceable as written. The second issue — whether Lanier’s actions constituted the unauthorized practice of law — is barred by the statute of limitations in the ALSLA.
 
 [8]
 

 Section 6-5-574(a), Ala.Code 1975, provides, in pertinent part:
 

 “All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.... ”
 

 The act or omission giving rise to Roberts’s request for a judicial declaration that Lanier had engaged in the unauthorized practice of law occurred upon the execution of the contract in April 2006, and Roberts says that she learned on April 27, 2006, that Lanier was not licensed to practice law in Alabama. However, Roberts did not file the present action until February 2009, well after the two-year statute of limitations had expired. For these reasons, we affirm the circuit court’s judgment in the Lanier defendants’ favor with regard to the request for a declaratory judgment.
 

 Roberts’s claim that Lanier breached the standard of care by misrepresenting to her that he was qualified to represent her in Alabama on the noncapital-murder charge is also barred by the ALS-LA’s statute of limitations. This alleged misrepresentation took place in April 2006 when the contract was executed. By her own admission, Roberts knew by May 2006 that Lanier was not licensed to practice law in Alabama, that Lanier had associated Stallings as local counsel, and that she would have to execute a. separate fee agreement with Stallings. Thus, the two-year statute of limitations had expired before February 2009 with respect to this claim, and we affirm the circuit court’s summary judgment in the Lanier defendants’ favor as to this claim.
 

 The Lanier defendants argued in their summary-judgment motion that Roberts’s remaining claims — that Lanier de
 
 *1185
 
 ceived her into executing the invalid contract, that he misrepresented to Roberts that she would not be entitled to any refund of the retainer fee if she terminated his employment, and that he converted Roberts’s funds for his personal use — were also barred by the statute of limitations. However, Roberts argues that “the[se] claims have been timely filed under the ‘saving provision’ contained in § 6-5-574.” Roberts’s brief, at 53-54.
 

 As noted previously, the two-year statute of limitations in § 6-5-574(a) generally begins to run at the time of the act, omission, or failure giving rise to the claim. As with the prior claims, the acts or omissions underlying the remaining claims occurred in April and May 2006, more than two years before Roberts filed suit. Roberts and Lanier executed the contract on April 21, 2006. A few days later, Lanier withdrew $50,000 from Roberts’s bank accounts and, according to Lanier’s deposition testimony, deposited the money in the firm’s bank account. According to Roberts, Lanier told her on May 1, 2006, that, even if she terminated his representation, she would not entitled to a refund of any part of the $50,000, which he said was a “nonrefundable retainer.”
 

 However, § 6-5-574(a) also provides “that if the cause of action is not discovered and could not reasonably have been discovered within [the two-year limitations period], then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.” Roberts argues that she learned for the first time on February 15, 2009, that the “nonrefundable retainer” language of the contract was unlawful in Alabama and that Lanier’s reliance on that language in refusing to refund to her any of the retainer was improper. She filed her original complaint three days later.
 

 Roberts also argues that she “had no reason to know of the misconduct committed by Lanier nor could the misconduct reasonably have been discovered prior to [February 15, 2009].” Roberts’s brief, at 54-55. We have found no evidence indicating that Roberts was aware that the nonrefundable-retainer language was unenforceable before February 15, 2009. Of course, when a party actually discovered or should have discovered an alleged misrepresentation is generally a question for the jury. See
 
 Jones v. Alfa Mut. Ins. Co.,
 
 1 So.3d 23, 31 (Ala.2008). Therefore, it appears that the remaining claims may fall within the savings provision of § 6-5-574(a) and are not barred by the statute of limitations as a matter of law.
 

 The Lanier defendants argue that through the exercise of ordinary diligence Roberts could have discovered these remaining claims before the statute of limitations expired. They argue that Roberts could have questioned Stallings, the district attorney, or the circuit court about Lanier’s alleged statements regarding the effect of the nonrefundable-retainer language in the contract. However, the Lanier defendants have not directed this Court to any evidence indicating that Roberts had, before February 15, 2009, any reason to doubt Lanier’s alleged representations that the nonrefundable-retainer language in the contract was valid and that, because of that language, she would not be entitled to a refund if she terminated his employment. We cannot agree that the exercise of ordinary diligence requires a client to seek independent verification of representations made by his or her attorney regarding the validity or meaning of terms in
 
 *1186
 
 an attorney-client employment contract.
 
 [9]
 

 The Lanier defendants also argue that Roberts did not present substantial evidence showing that she is entitled to the benefit of the provision of § 6-5-574(a) that allows an otherwise untimely action to be filed six months from the date of discovery. However, the record contains an affidavit in which Roberts states, in pertinent part:
 

 “Because I saw no need of having two attorneys on my case and incurring double the expense associated with two attorneys, coupled with the fact that I felt Lanier had deceived me into retaining his services, on or about May 1, 2006, during a meeting with Lanier at the Cherokee County Jail, I terminated La-nier and requested a refund of the $50,000 previously taken by Lanier as his ‘non-refundable’ retainer.
 

 “In response, Lanier told me that based on the ‘non-refundable’ retainer language of his employment contract that I was not entitled to a refund of any fees. Lanier further explained that I might as well let him continue working on my case since I would not be receiving a refund of any fees even if he was terminated.
 

 “I accepted Lanier’s representations as I had no reason to believe there was anything improper about the ‘non-refundable’ retainer language of Lanier’s employment contract at that time, or that Lanier was prohibited from retaining the ‘non-refundable’ retainer despite his termination.
 

 “Based on Lanier’s representations, I agreed Lanier could continue on my case until such time as his billable hours equaled $50,000, or I was indicted for capital murder, whichever occurred first.
 

 [[Image here]]
 

 “But for the fraudulent representations of Lanier, I would not have paid Lanier a $50,000 ‘non-refundable’ retainer, nor would I have permitted him to continue on my case after terminating him and demanding a refund of the $50,000 ‘non-refundable’ retainer.”
 

 As the Lanier defendants note, “substantial evidence is evidence of such weight
 
 *1187
 
 and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assur. Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). Roberts’s affidavit testimony is sufficient to meet this standard as to the remaining claims.
 

 The Lanier defendants also argued that they were entitled to a summary judgment because Roberts had failed to present expert testimony that Lanier had breached the applicable standard of care.
 
 [10]
 
 Roberts argues that her remaining claims fall within “the common sense exception to the general rule requiring expert testimony in a legal malpractice action.” Roberts’s brief, at 50.
 

 This Court has stated “that an exception to the general requirement that a plaintiff present expert testimony in support of a legal-malpractice claim occurs where a legal-service provider’s want of skill or lack of care is so apparent as to be understood by a layperson and requires only common knowledge and experience to understand it.”
 
 Valentine v. Watters,
 
 896 So.2d 385, 394 (Ala.2004). Roberts argues:
 

 “[T]he jury will decide whether Lanier breached the applicable standard of care in:
 

 “(a) deceiving Roberts into executing a ‘non-refundable retainer’ employment contract under the pretense that such an agreement was valid and lawful;
 

 “(b) misrepresenting to Roberts that under no circumstance, even if he were terminated, would Roberts be entitled to a refund of fees because the retainer of $50,000 was ‘non-refundable’; and
 

 “(c) converting funds belonging to Roberts, in the approximate sum of $50,000.00, to his own personal use.
 

 “None of these issues requires scientific, technical, or other specialized knowledge in order for the trier of fact to determine whether the applicable standard of care was breached. A layperson utilizing common knowledge and experience can certainly make this determination.”
 

 Roberts’s brief, at 52. We agree.
 

 It is undisputed that contractual provisions for nonrefundable retainers are unenforceable in Alabama and that the Lanier defendants were not entitled to keep any unearned fees. It is also undisputed that Lanier withdrew $50,000 from Roberts’s accounts arid has not refunded any of that fee even though, according to Roberts, she attempted to terminate Lanier’s employment soon after it began. If the jury finds that Lanier misrepresented to Roberts that the nonrefundable-retainer language was valid and that she was not entitled to a refund of any of the retainer, it could, using “common knowledge and experience,” determine that such misrepresentations and Lanier’s retention of the retainer constituted a breach of the applicable standard of care. Therefore, we conclude that Roberts was not required to provide expert testimony as to the remaining claims against the Lanier defendants. See
 
 Valentine,
 
 supra.
 

 The Lanier defendants also argued in their summary-judgment motion (1) that Roberts had failed to prove that “but for the alleged violation of the standard of care by the defendant, the plaintiff
 
 *1188
 
 would have achieved a better result, or different outcome in her case”; and (2) that Roberts had failed to show that she had suffered any injury as a result of the alleged misconduct. We find these arguments to be without merit as well.
 

 First, Roberts has not alleged that Lanier’s conduct with regard to the underlying criminal matter itself fell below the standard of care. Instead, her claims are related to his conduct with regard to the terms of, and the fees charged for, Lanier’s employment under the contract. Therefore, the outcome of the underlying criminal case is irrelevant to the question of wrongdoing in this action.
 

 Second, Roberts’s affidavit testimony indicates that “[b]ut for the fraudulent representations of Lanier, [she] would not have paid Lanier a $50,000 ‘non-refundable’ retainer, nor would [she] have permitted him to continue on [her] case after terminating him and demanding a refund of the $50,000 ‘non-refundable’ retainer.” This testimony is sufficient to create a question of fact as to whether Roberts suffered damage as a result of Lanier’s alleged misconduct. “ ‘The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law.’ ”
 
 Alabama Elec. Coop. v. Bailey’s Constr. Co.,
 
 950 So.2d 280, 283 (Ala.2006) (quoting
 
 Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala.1994)).
 

 For the foregoing reasons, we hold that the circuit court erred in entering a summary judgment in favor of the Lanier defendants on Roberts’s claims (1) that Lanier misrepresented to her that the contract as written was valid and enforceable; (2) that Lanier misrepresented to Roberts that she was not entitled to any refund of the retainer; and (3) that Lanier converted Roberts’s funds to his personal use. As to those claims, we reverse the circuit court’s judgment and remand the case for further proceedings consistent with this opinion.
 

 II.
 
 Stallings and Coggin
 

 We now address Roberts’s arguments with regard to the summary judgments in favor of Stallings and Coggin. Although Stallings and Coggin filed separate summary-judgment motions in the circuit court, Roberts alleges the same error and makes the same arguments as to both. Roberts argues that the summary-judgment motions filed by Stallings and Coggin “[were] not in conformity with Rule 56, Ala. R. Civ. P., [and,] therefore, the burden never shifted to Roberts to produce substantial evidence to defeat the motion[s]. Accordingly, the summary judgments] [were] due to be summarily denied and the trial court erred to reversal in granting the motion[s].” Roberts’s brief, at 62. We agree.
 

 As Roberts notes, Rule 56(c)(1), Ala. R. Civ. P., provides, in pertinent part:
 

 “The [summary-judgment] motion shall be supported by a narrative summary of what the movant contends to be the undisputed material facts; that narrative summary may be set forth in the motion or may be attached as an exhibit. The narrative summary shall be supported by specific references to pleadings, portions of discovery materials, or affidavits and may include citations to legal authority.”
 

 Stallings’s summary-judgment motion stated, in its entirety:
 

 “Defendant, Rodney Loring Stallings, moves the Court to enter, pursuant to Rule 56 of the Alabama Rules of Civil Procedure, a summary judgment in the Defendant’s favor dismissing the action on the ground that there is no genuine
 
 *1189
 
 issue as to any material fact and that the Defendant is entitled to a judgment as a matter of law.
 

 “This motion is based upon the pleadings, the depositions of the parties and upon the failure of the Plaintiff to provide to the Defendant the name of any expert which she expects to call in support of the Plaintiffs claim against the Defendant.
 

 “The Defendant adopts the brief and argument submitted by the co-defendant, Steve Lanier, in support of his motion for summary judgment.”
 

 Coggin’s summary-judgment motion similarly provided, in its entirety:
 

 “COMES NOW, Coggin
 
 &
 
 Stallings, LLC, (dissolved), and requests] the Court to enter, pursuant to Rule 56 of the Alabama Rules of Civil Procedure, a summary judgment in its favor dismissing the action on the ground that there is no genuine issue [of] material fact and Defendant is entitled to a judgment as a matter of law.
 

 “This motion is based upon the pleadings, the depositions of the parties, and upon the absence of any expert testimony to establish that the Defendant failed to meet the standard of care for rendering legal services in Alabama.
 

 “Defendant respectfully adopts the brief and argument of Co-Defendant, Steve Lanier, in support of its summary judgment motion.”
 

 Neither Stallings’s motion nor Coggin’s motion contains any statement of facts or any discussion of Roberts’s claims. This Court has stated:
 

 “ ‘The [summary-judgment] movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim
 
 challenged by the movant.’ Harper v. Winston County,
 
 892 So.2d 346, 349 (Ala.2004) (emphasis added). However, if the movant does not satisfy his initial burden, ‘then he is not entitled to judgment.
 
 No defense to an insufficient showing is required.’ Ray v. Midfield Park, Inc.,
 
 293 Ala. 609, 612, 308 So.2d 686, 688 (1975) (emphasis added). ‘A motion that does not comply with Rule 56(c)[, Ala. R. Civ. P.,] does not require a response in defense from the nonmovant.’
 
 Horn v. Fadal Machining Ctrs., LLC,
 
 972 So.2d 63, 70 (Ala.2007). Simply stated, ‘ “[a] summary judgment is not proper if the movant has not complied with the requirements of Rule 56.” ’ 972 So.2d at 70 (quoting
 
 Northwest Florida Truss, Inc. v. Baldwin County Comm’n,
 
 782 So.2d 274, 277 (Ala.2000)).”
 

 White Sands Group, L.L.C. v. PRS II, LLC,
 
 998 So.2d 1042, 1054-55 (Ala.2008).
 

 Coggin argues that its summary-judgment motion complied with Rule 56(c) because it attached to its motion “the brief and argument of Lanier, together with all submissions and referenced depositions of all parties,” Coggin’s brief, at 11, and incorporated them by reference.
 
 [11]
 
 However, as Roberts notes, the Lanier defendants made no mention in their summary-judgment motion of Roberts’s claims against Stallings or Coggin, nor did they present any facts or arguments related to these claims. Merely incorporating by reference a motion that included no mention of, or facts or arguments related to, the claims against them was insufficient to bring Stallings’s and Coggin’s motions into compliance with Rule 56(c). “A summary-judgment movant does not discharge his initial burden to challenge the sufficiency
 
 *1190
 
 of the evidence of a nonmovant’s claim by simply
 
 ignoring
 
 the claim.”
 
 White Sands,
 
 998 So.2d at 1055. “A summary judgment is not proper if the movant has not complied with the requirements of Rule 56.”
 
 Northwest Florida Truss, Inc. v. Baldwin County Comm’n,
 
 782 So.2d 274, 277 (Ala.2000). Therefore, the circuit court erred in entering summary judgments in favor of Stallings and Coggin. We reverse those judgments and remand the case for further proceedings.
 

 Conclusion
 

 For the reasons stated above, we affirm the circuit court’s summary judgment in favor of the Lanier defendants with regard to Roberts’s request for a declaratory judgment and with respect to her claim that Lanier misrepresented to Roberts at the time the contract was executed that he was qualified to represent her in Alabama on the noncapital-murder charge.
 

 However, we reverse the circuit court’s summary judgment in favor of the Lanier defendants with regard to Roberts’s claims that Lanier deceived her into executing the contract under the pretense that it was valid and enforceable, that Lanier misrepresented to Roberts that she would not be entitled to any refund of the retainer paid under' the contract if his representation was terminated, and that Lanier took Roberts’s funds for his personal use. We also reverse the circuit court’s summary judgments in favor of Stallings and Coggin. We remand the case for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.
 

 [1]
 

 . Roberts also sued the Alabama State Bar. However, the circuit court determined that its judgments in favor of the other defendants rendered the claims against the Alabama State Bar moot. Roberts has not appealed that determination.
 

 [2]
 

 . Lanier has conceded that the "nonrefundable retainer” language is prohibited in Alabama, that "the contract was 'unenforceable
 
 as written
 
 under Alabama law,' ” and "that retaining the entire fee without performing equivalent services would be prohibited.” Lanier and the firm’s brief, at 4 (emphasis in original).
 

 [3]
 

 . See Rule VII, Rules Governing Admission to the Alabama State Bar.
 

 [4]
 

 . Roberts alleges that the firm is liable for Lanier’s alleged misconduct under a theory of respondeat superior.
 

 [5]
 

 . See supra note 1.
 

 [6]
 

 . The Lanier defendants also argue that Roberts's claims against them fall within the scope of the ALSLA because Lanier was admitted
 
 pro hac vice
 
 in August 2006. It seems clear that, after he obtained
 
 pro hac vice
 
 status, Lanier qualified as a "legal-service provider” under the ALSLA. However, Roberts’s claims arise out of alleged misconduct that is said to have occurred before Lanier obtained such status. Nevertheless, because we have held that Roberts’s claims against the Lanier defendants are otherwise subject to the ALS-LA, we need not consider what, if any, retroactive effect Lanier’s
 
 pro hac vice
 
 admission had on the applicability of the ALSLA to Roberts’s claims.
 

 [7]
 

 . Roberts also requested a judgment declaring that Lanier had violated several of the Alabama Rules of Professional Conduct and that the contract was void because Lanier was not licensed to practice law in Alabama at the time the contract was executed. Roberts has not raised these issues on appeal; therefore, we do not address them.
 

 [8]
 

 . Roberts concedes that "[i]f the Lanier defendants were subject to the ALSLA, [then this] claim would be subsumed into the ALS-LA.” Roberts’s reply brief, at 13.
 

 [9]
 

 . The Lanier defendants also argue that Roberts defeats her own claim that the alleged misconduct could not have been discovered before February 2009 by arguing that no expert testimony is needed to prove that the Lanier defendants breached the applicable standard of care. They argue:
 

 “[Roberts] insists that ... no expert testimony is needed to prove the violative nature of the 'non-refundable retainer’ clause, and of Lanier's alleged misrepresentation, because any lay juror could make that determination without the need for an expert. ... In other words, 'anybody,' whether an attorney or not, could tell readily that a nonrefundable retainer contract, and an allegation that such a contract is valid and enforceable, is wrong.
 

 "If that is the case, then [Roberts] (who has two degrees in radiological techniques) certainly should have realized that, or should have been put on inquiry to look into the matter further, at the very least; and because of the obvious nature of this representation (by [Roberts's] own contentions), she should have known and realized the falsity of the statement, just as any lay juror could have, according to her. Thus, not only has she testified herself out of a cause of action for fraud, she has destroyed her opportunity to rely on the 'savings’ provisions of the statutes of limitations. She should not be permitted to use this feigned ‘ignorance’ to further her cause.”
 

 The Lanier defendants’ brief, at 31-32.
 

 The Lanier defendants' argument is disingenuous and without merit. Roberts does not argue that a jury could tell that the nonrefundable-retainer language was unlawful on its face. Instead, she claims that, in light of the Lanier defendants’ concession that the non refundable-retainer language is invalid and unenforceable in Alabama, a jury could determine without expert testimony that Lanier’s alleged misrepresentation to the contrary constituted a breach of the standard of care.
 

 [10]
 

 . "The standard of care applicable to a legal service provider is that level of such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case.” § 6-5-572(3)a„ Ala.Code 1975.
 

 [11]
 

 . Stallings has not filed a brief with this Court.